29829. GENERAL CHEMICAL COMPANY *v.* PORTER *et al.*

DECIDED JANUARY 27, 1943.

*E. P. Johnston,* for plaintiff.

*Hamilton Kimzey, Herbert B. Kimzey, Frank Jackson Adams Jr.,* for defendants.

FELTON, J. General Chemical Company sued Mrs. Belle Vernon Porter and J. C. Porter on five promissory notes, payable to plaintiff and signed on their faces by Habersham Orchards, by J. C. Porter, and on the back by Belle Vernon Porter and J. C. Porter, the petition alleging that Mrs. Porter was trading as Habersham Orchards and that J. C. Porter was managing the same for her. Mrs. Porter contended that the trade-name was that of her husband, J. C. Porter, and that she signed or indorsed the notes as surety for him and was therefore not liable. The jury found in favor of the plaintiff against J. C. Porter and in favor of Mrs. Porter. A motion for a new trial was overruled, and the plaintiff excepted.

1. The evidence showed that J. C. Porter was manager for the Consolidated Apple Growers Exchange. The exchange handled and sold insecticides for the plaintiff in 1936, and had specific instructions to sell insecticides for the account of the plaintiff only for cash or on credit to those whose credit was approved by the plaintiff. The exchange sent in the name, "Habersham Orchards, c/o Mrs. J. C. Porter, Clarkesville, Georgia, Orchardists, $2000," as an approved credit risk. J. C. Porter caused certain insecticides to be sent to Habersham Orchards which were used on apple trees owned by Mrs. Porter. J. C. Porter testified that he rented the orchard from his wife and that the debt incurred was his own. Mrs. Porter testified that she never became indebted to plaintiff; never purchased insecticides from it; that she never operated an orchard under the name of Habersham Orchards; that her husband had been looking after her business since their marriage, and that she was not a member of a firm called Habersham Orchards. She also testified that she had been letting her husband do as he saw fit in the operation of her business. There was one invoice which showed "Sold to Habersham Orchards, c/o Mrs. J. C. Porter, $33." The other invoices showed simply "Habersham Orchards." J. C. Porter could not pay for the insecticides when called on and notes were executed which the agent for the plaintiff

wanted signed by the owner of the land where the material was used. Upon being asked to indorse the notes, the plaintiff's agent testified that Mrs. Porter stated that they owed the money, having gotten the benefit of the insecticides, and that she would sign them as they were not able to pay at that time. There was no evidence that Mrs. Porter knew that the insecticides were intended to be sold to her or on her credit, or that they were being sold under such circumstances as to lead the plaintiff to believe they were being sold to her or on her credit. There was nothing in the evidence which would or could invoke an estoppel against Mrs. Porter. Nor was there any evidence on which to base a ratification by Mrs. Porter of a joint undertaking.

A wife can make a joint contract with her husband, as has been held many times, and such a contract can be ratified by a wife with knowledge of all the facts, but here there was no evidence that Mr. Porter undertook to enter into a contract for himself as principal, as one joint party, and by himself as agent for his wife as the other joint party, with the plaintiff as the other contracting party. If such had been the case Mrs. Porter could have ratified the contract, with a knowledge of the facts, and her indorsement would have bound her, but there was no such evidence. The sole issue was whether Habersham Orchards was in fact Mr. Porter or whether it was Mrs. Porter; whether Mr. Porter incurred the debt or whether he incurred it as agent for his wife. The jury found that Mr. Porter incurred the debt on his own behalf or account, and the finding was authorized. Mrs. Porter's indorsement of the notes would not bind her, even if she received a benefit from the insecticides, if the original and sole credit was extended to Mr. Porter, for the reason that a wife can not ratify such a contract and the consideration as to her was a past one on which a contract can not be based.

2. The following charge was not error under the facts of the case: "But in this connection, gentlemen, I charge you that if the only connection between Mr. and Mrs. Porter with reference to the Habersham Orchards was the fact that Mrs. Porter owned the land upon which these trees were located, or upon which this orchard business was conducted, if she simply owned the land, and by any arrangement let her husband operate a business on the land, and that was the only connection that she may have had with

Habersham Orchards, then I charge you that the mere fact that she owned the land would not make her liable for obligations created by her husband and for credit extended to him personally, or extended to him while operating under a trade-name. And I charge you that the mere fact that the wife received the benefit of the goods and merchandise or insecticides bought by her husband or on his credit while operating under a firm name or a trade-name would not make her liable in law to the seller for the price of the goods or merchandise, or insecticides sold and delivered to him personally, or sold and delivered to him while he was operating under a firm or trade-name and operating a partnership in which his wife had no connection."

3. The plaintiff assigns error on the exclusion of the following letter: "Consolidated Apple Growers Exchange, Cornelia, Georgia. Attention Mr. L. J. Moultrie, Manager. Gentlemen: We have just learned that there has recently been delivered to you direct, certain insecticides materials, and in order to avoid any possibility of misunderstanding as to the conditions under which such materials, or any other materials [which] are to be released, wish to advise that under no circumstances should any materials be released by you unless sold for cash, or against approved letter of credit from this department. We want to make certain that there be no exceptions to these conditions, and in order to further facilitate the matter of sales, suggest that you furnish us as quickly as possible a list of intended customers on terms other than cash. In such cases where you may sell for cash, reports of sale must be made promptly to the Philadelphia office with cash accompanying report of sale. Whenever sales are made against approved letter of credit, sale must be reported promptly to the Philadelphia office, who will bill such customers direct. In each case, your inventory account will be credited with materials as covered by report of sale. In order to avoid any possibility of misunderstanding regarding these instructions, which must at all times be considered in force and effect, unless written instructions to the contrary are received by you from this department in writing, we would ask that you acknowledge the receipt of this understanding by returning the attached copy of letter with your acknowledgment signed thereon, in the place provided for this purpose. Very truly yours, General Chemical Company, William Profke, Credit Department. Ac-

knowledged: L. G. Moultrie, 12/19/36. L. G. Moultrie." The plaintiff's contention is that the letter plus the accrediting of Habersham Orchards, c/o Mrs. J. C. Porter, shows a sale and extension of credit to Mrs. Porter. We do not see how the exclusion of the letter was harmful to the plaintiff, for the reason that J. C. Porter and an agent of the plaintiff both testified that the insecticides placed with the exchange were to be sold on the terms stated in the letter. As we see it the plaintiff had the full benefit of its contention in the respect under discussion. The court did not err in overruling the motion for new trial.

*Judgment affirmed. Stephens, P. J., and Sutton, J., concur.*